Opinion filed March 5, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed March 5,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00221-CV 

                                                                    __________

                                                                              

                                                  IN THE MATTER OF J.B.L. 

 



 

                                           On
Appeal from County Court at Law

 

                                                    Montgomery
County, Texas

 

                                          Trial
Court Cause No. 07-01B00890-JV

 



 

M
E M O R A N D U M   O P I N I O N

J.B.L.[1]
appeals from the adjudication and disposition in a juvenile court action
alleging  delinquent conduct, namely aggravated robbery.  J.B.L. was
adjudicated under the determinate sentencing statute.[2]  
The jury assessed disposition at confinement for thirty years.  We affirm.

Background
Facts 








J.B.L.
participated in several crimes in two different counties.  J.B.L. and Kelvin
Alexander,[3] an older male
who lived next door to J.B.L., attempted to carjack Manuel Mundo outside his
apartment.  Mundo testified that  J.B.L. was carrying an object that he
believed to be a shotgun.  After the failed carjacking attempt, J.B.L. and
Alexander approached Gladys Martinez in the same apartment complex and stole
her vehicle.  Martinez testified that J.B.L. appeared to be carrying a shotgun
and yelled at her to give him the keys.  Later that same morning, J.B.L. drove
Martinez=s stolen
vehicle to a Wal-Mart on Interstate Highway 45.  There, Alexander approached
Colleen Coats and pointed a shotgun at her and demanded her money.  J.B.L. and
Alexander were identified in the Wal-Mart surveillance video.

After
leaving Wal-Mart, J.B.L. and Alexander drove to Huntsville.  There, they
forcibly entered a home and threatened the residents with guns.  They stole
money and drugs.  J.B.L. testified that his gun was not loaded and that
Alexander was looking for drugs.  J.B.L. and Alexander were eventually spotted
driving Martinez=s
stolen vehicle at a high rate of speed on Interstate Highway 45.  Officer
Daniel McGrew activated his overhead lights to initiate a traffic stop of the
vehicle, but J.B.L. accelerated.  When J.B.L. finally pulled over, he jumped
out of the vehicle and began running.  Officer McGrew gave chase.  Two
civilians tackled J.B.L. and held him until  Officer McGrew arrived.  After his
arrest, J.B.L. gave a statement and admitted that he was involved in the
robbery at Wal-Mart and at the home in Huntsville.

The
State filed a petition for determinate sentencing alleging that J.B.L.
committed  aggravated robbery by threatening Coats with a deadly weapon while
in the course of committing a theft.  The grand jury certified the petition. 
J.B.L. pleaded true to the petition and elected to go to a jury for
disposition.  After a two-day trial, the jury assessed disposition at thirty
years confinement. 

Issue
on Appeal

J.B.L.
argues in one issue that the determinate sentencing statute, as applied in this
case,  violates the Due Process Clause of the Fifth Amendment of the United
States Constitution by increasing his punishment without allowing him to
present the enhancement to the jury for consideration beyond a reasonable
doubt. 

Standard
of Review








When
reviewing an attack upon the constitutionality of a statute, we presume the
statute is valid and the legislature acted reasonably in enacting the statute.  Rodriquez
v. State, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).  The individual
challenging the statute bears the burden of proving it is unconstitutional.  Id. 
We must uphold the statute if there is a reasonable construction that will
render the statute constitutional and carry out the legislative intent.  Ex
parte Flores, 130 S.W.3d 100, 106 (Tex. App.CEl
Paso 2003, pet. ref=d).

Analysis 

When a juvenile commits a felony, the juvenile court
may impose either an indeterminate sentence or a determinate sentence.  Section
54.04.  If a juvenile commits an aggravated robbery, under an indeterminate
sentence, he would spend at least one year confined in the Texas Youth
Commission, and the Texas Youth Commission would be required to release him no
later than his nineteenth birthday.  Section 54.04(d)(2); Tex. Hum. Res. Code Ann. ' 61.084(e) (Vernon Supp. 2008).[4]  However, when a juvenile is charged with
aggravated robbery, the State also has the option to file a petition for
determinate sentencing with the grand jury.  Tex.
Fam. Code Ann. ' 53.045(a)(7) (Vernon 2008).  If the
grand jury certifies the petition for determinate sentencing, a jury may
sentence the juvenile to commitment to the Texas Youth Commission with a
possible transfer to the Texas Department of Criminal Justice for a term not to
exceed forty years.  Section 54.04(d)(3).  The following steps must be
taken in order for a court to impose a determinate
sentence:  (1) the State=s
petition must allege that the juvenile committed one of the crimes enumerated
in Tex. Fam. Code Ann. ' 53.045(a) (Vernon 2008);
(2) the State must refer the petition to the grand jury; (3) the grand jury
must approve the petition by a vote of at least nine jurors; (4) the approval
by the grand jury must be certified to the court; and (5) the certification
must be entered in the record.  Tex.
Fam. Code Ann. ''
53.045, 54.04(d)(3) (Vernon 2008); In re S.J., 977 S.W.2d 147, 149 (Tex.
App.CSan Antonio 1998,
no pet.).  








A
juvenile who receives a determinate sentence is initially committed to the
Texas Youth Commission=s
custody.  Section 54.04(d)(3).  However, when the juvenile turns sixteen but
before he turns nineteen, the Texas Youth Commission may refer the juvenile to
the committing court for a transfer hearing.  Tex.
Hum. Res. Code Ann. '
61.079(a) (Vernon Supp. 2008).  At the transfer hearing, the committing court
has the authority to (1) return the juvenile to the Texas Youth Commission with
approval for the release of the juvenile under supervision, (2) return the
juvenile to the Texas Youth Commission without the approval for the release of
the juvenile under supervision, or (3) order the transfer of the juvenile to
the custody of the Texas Department of Criminal Justice, Institutional
Division.  Tex. Fam. Code Ann. ' 54.11(i), (j) (Vernon
2008).   An appeal may be taken from an order transferring the juvenile to the
Texas Department of Criminal Justice, Institutional Division.  Tex. Fam. Code Ann. ' 56.01(c)(2) (Vernon
2008).  If the Texas Youth Commission does not refer the juvenile to the
committing court for a transfer hearing before his nineteenth birthday, the
Commission must either discharge the juvenile from its custody or transfer the
juvenile to the Texas Department of Criminal Justice, Division of Pardons and
Paroles, to serve out the juvenile=s
sentence on parole.  Tex. Hum. Res. Code
Ann. '
61.084(e), (g) (Vernon Supp. 2008).

J.B.L.
argues that his due process rights were violated because, rather than having a
jury determine beyond a reasonable doubt whether his punishment should be
increased from an indeterminate sentence to a determinate sentence, the grand
jury certified the petition for determinate sentencing based upon probable
cause.  J.B.L. argues that the jury should have had an opportunity to consider
an indeterminate sentence.  At the disposition hearing, the probation officer,
Amechi Esekody, testified on direct examination that her recommendation was
that J.B.L. be committed to the Texas Youth Commission for an indeterminate
sentence.  J.B.L. cross-examined Esekody as to why he would be a candidate for
indeterminate sentencing.  

Q. 
Is it safe for this jury to conclude, then, that [J.B.L.]=s behaviors are more
associated with child-like behaviors than adult behaviors and that=s why you=re recommending he go to
the youth commission for an indeterminate time period?  Can we draw that
conclusion or not?

 

A. 
It would be difficult to draw that conclusion based on the fact of his
extensive record in the juvenile justice system.

 

On redirect, the
State clarified with the witness that it was seeking a determinate sentence. 
J.B.L. objected to that line of questioning, stating that the jury should have
the option of sentencing him to an indeterminate sentence as a lesser included
type of sentence.  The trial court overruled the objection.  J.B.L. did not
present an instruction for an indeterminate sentence in the charge.  








The
jury was instructed that, in order to assess a disposition, it must find that
the juvenile is in need of rehabilitation or that the protection of the public
requires disposition be made.  The jury was charged that the disposition for
aggravated robbery was commitment to the Texas Youth Commission, with a
possible transfer to the Texas Department of Criminal Justice, Institutional
Division, or the Division of Pardons and Paroles for no more than forty years. 
The jury was instructed that, if it assessed the disposition for a term of not
more than ten years, then it could place the juvenile on probation as an
alternative to commitment to the Texas Youth Commission.  The jury was also
instructed that it could not have a disposition placing the juvenile on
probation outside the juvenile=s
home unless it found beyond a reasonable doubt that the juvenile=s home did not provide the
quality of care and level of support and supervision that the juvenile needed
to meet the conditions of probation.

The
jury found beyond a reasonable doubt that J.B.L. was in need of rehabilitation
or that the protection of the public required disposition be made.  The jury
assessed punishment at thirty years confinement and, therefore, did not
consider probation for J.B.L.

On
appeal, J.B.L. relies upon Apprendi v. New Jersey, 530 U.S. 466 (2000). 
In Apprendi, the appellant fired several .22 caliber bullets into the
home of an African-American family that had moved into a previously all-white
neighborhood.  Id. at 469.  Apprendi admitted to the shooting and stated
that he did not want the family in the neighborhood because they were black.  Id. 
He was charged with twenty-three different counts alleging shootings on four
different dates and the  unlawful possession of various weapons.  Id. 
None of the counts referred to the hate crime statute or that Apprendi acted
for a racially biased purpose.  Apprendi entered into a plea bargain agreement
in which he pleaded guilty to two counts of second degree possession of a
firearm for an unlawful purpose and one count of the third degree offense of
unlawful possession of an antipersonnel bomb.  Id. at 469-70.  The State
agreed to drop the remaining twenty counts.  The State reserved the right to
request that the court impose an enhanced sentence on the ground that the
offense was committed with a biased purpose, and Apprendi reserved the right to
appeal the constitutionality of the hate crime statute.  Id. at 470.








After
Apprendi pleaded guilty, the State moved to enhance the sentence under New
Jersey=s hate crime statute. 
Id.  The trial court found by a preponderance of the evidence that
Apprendi=s purpose in
committing the crime was to intimidate the victim and that  the crime was
motivated by racial bias.  Id. at 471.  The trial court sentenced
Apprendi to twelve years confinement for one of the possession of firearm
counts and to shorter concurrent sentences on the other counts.  Id.

The
United States Supreme Court held that, A[o]ther
than the fact of a prior conviction, any fact that increases the penalty for a
crime beyond the prescribed statutory maximum must be submitted to a jury, and
proved beyond a reasonable doubt.@ 
Id. at 490.  The high court went on to say that A[i]t is unconstitutional for a legislature to
remove from the jury the assessment of facts that increase the prescribed range
of penalties to which a criminal defendant is exposed.  It is equally clear
that such facts must be established by proof beyond a reasonable doubt.@  Id. 

Apprendi
is distinguishable from the case before us in a number of ways.  In Apprendi,
the issue was that a factual determination authorizing an increase in
punishment was not made by a jury on the basis of proof beyond a reasonable
doubt.  Id. at 469.  Also in Apprendi, the appellant pleaded
guilty to possession of a firearm for an unlawful purpose and unlawful
possession of a prohibited weapon.  However, there was no mention of the hate
crime statute in the charging instrument.  After Apprendi pleaded guilty, the
State sought to increase the punishment by filing a motion to enhance the
sentence under the hate crime statute.  Here, there are no facts that change
the range of  punishment.  Rather, once the State decided to file a petition
for determinate sentencing, the range of punishment was set.  There was not an
enhancement in punishment.  The range of punishment did not increase based on
any facts that were not presented to the jury.  All the facts were presented to
the jury when it decided J.B.L.=s
disposition. 

J.B.L.
also argues that the determinate sentencing statute increases the stigma
associated with his activity by changing the consequences of such criminal
activity from a confidential, privileged period of juvenile supervision to a
first degree felony conviction on J.B.L.=s
public adult record.  The Due Process Clause of the Fifth Amendment of the
United States Constitution requires that any fact that increases the maximum
penalty for a crime must be charged in an indictment, submitted to a jury, and
proven beyond a reasonable doubt.  Jones v. United States, 526 U.S. 227,
243 (1999).  This case met all of those requirements.  The petition for
determinate sentencing acts as an indictment.  Section 53.045(d); In re
R.L.H., 771 S.W.2d 697, 699 (Tex. App.CAustin
1989, writ den=d).  A
petition, acting as an indictment,  was presented to the grand jury, all the
facts were submitted to the jury, and all the facts were proven beyond a
reasonable doubt.     








Whether
J.B.L. will serve any time in the Texas Department of Criminal Justice,
Institutional Division, hinges on the required transfer hearing.  J.B.L. has
not been transferred to the Texas Department of Criminal Justice, Institutional
Division, and the required referral for a transfer hearing has not been made to
the committing court.  If the committing court does issue an order transferring
J.B.L. to the Texas Department of Criminal Justice, Institutional Division,
then he may appeal that order.  However, because J.B.L. may not serve any time
in the Texas Department of Criminal Justice, Institutional Division, his claims
are not ripe for review.  An opinion on J.B.L.=s 
due process claims at this time would be wholly advisory.  In re S.B.C.,
805 S.W.2d 1, 5 (Tex. App.CTyler
1991, writ den=d).  This
court has no authority to render advisory opinions.  Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998);  City of Garland v. Louton,
691 S.W.2d 603, 605 (Tex. 1985).  J.B.L.=s
issue on appeal is overruled. 

Conclusion

We
affirm the judgment of the trial court. 

 

 

RICK STRANGE

JUSTICE

 

March 5, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.        









[1]It is noted that J.B.L. is also referred to as J.V.L.
in part of the clerk=s record.  However, his signature reflects J.B.L.





[2]Tex. Fam. Code Ann. ' 54.04 (Vernon 2008).





[3]In Volumes Three and Four of the Reporter=s Record, Alexander=s
first name is spelled AKelvin.@  In the
afternoon session of June 12, a different court reporter transcribed the
disposition hearing.  In Volume Five of the Reporter=s Record, Alexander=s
first name is spelled ACalvin.@  Alexander did
not testify at the disposition hearing,
and his name is never spelled out for the court reporter. 





[4]J.B.L. argues in his brief that he may be confined to
the Texas Youth Commission until his twenty-first birthday; however, in 2007,
the 80th legislature amended the statute for the Texas Youth Commission to
terminate its control once the juvenile turns nineteen instead of twenty-one. 
This amended statute became effective June 8, 2007.  J.B.L. was sentenced to
the Texas Youth Commission on June 13, 2007.  See Act of June 8, 2007,
80th Leg., R.S., ch. 263, '' 53, 78, 2007
Tex. Sess. Law Serv. 421, 449 (Vernon) (codified in Tex. Hum. Res. Code Ann. '
61.084(e) (Vernon Supp. 2008)).