**Opinion filed March 5, 2009**



In The

# Eleventh Court of Appeals

———

## No. 11-07-00221-CV

———

## IN THE MATTER OF J.B.L.

**On Appeal from County Court at Law**

**Montgomery County, Texas**

**Trial Court Cause No. 07-01–00890-JV**

## MEMORANDUM OPINION

J.B.L.[1] appeals from the adjudication and disposition in a juvenile court action alleging delinquent conduct, namely aggravated robbery. J.B.L. was adjudicated under the determinate sentencing statute.[2] The jury assessed disposition at confinement for thirty years. We affirm.

### Background Facts

J.B.L. participated in several crimes in two different counties. J.B.L. and Kelvin Alexander,[3] an older male who lived next door to J.B.L., attempted to carjack Manuel Mundo outside his

---

[1]It is noted that J.B.L. is also referred to as J.V.L. in part of the clerk's record. However, his signature reflects J.B.L.

[2]TEX. FAM. CODE ANN. § 54.04 (Vernon 2008).

[3]In Volumes Three and Four of the Reporter's Record, Alexander's first name is spelled "Kelvin." In the afternoon session of June 12, a different court reporter transcribed the disposition hearing. In Volume Five of the Reporter's Record, Alexander's first name is spelled "Calvin." Alexander did not testify at the disposition hearing, and his name is never spelled out for the court reporter.

apartment. Mundo testified that J.B.L. was carrying an object that he believed to be a shotgun. After the failed carjacking attempt, J.B.L. and Alexander approached Gladys Martinez in the same apartment complex and stole her vehicle. Martinez testified that J.B.L. appeared to be carrying a shotgun and yelled at her to give him the keys. Later that same morning, J.B.L. drove Martinez's stolen vehicle to a Wal-Mart on Interstate Highway 45. There, Alexander approached Colleen Coats and pointed a shotgun at her and demanded her money. J.B.L. and Alexander were identified in the Wal-Mart surveillance video.

After leaving Wal-Mart, J.B.L. and Alexander drove to Huntsville. There, they forcibly entered a home and threatened the residents with guns. They stole money and drugs. J.B.L. testified that his gun was not loaded and that Alexander was looking for drugs. J.B.L. and Alexander were eventually spotted driving Martinez's stolen vehicle at a high rate of speed on Interstate Highway 45. Officer Daniel McGrew activated his overhead lights to initiate a traffic stop of the vehicle, but J.B.L. accelerated. When J.B.L. finally pulled over, he jumped out of the vehicle and began running. Officer McGrew gave chase. Two civilians tackled J.B.L. and held him until Officer McGrew arrived. After his arrest, J.B.L. gave a statement and admitted that he was involved in the robbery at Wal-Mart and at the home in Huntsville.

The State filed a petition for determinate sentencing alleging that J.B.L. committed aggravated robbery by threatening Coats with a deadly weapon while in the course of committing a theft. The grand jury certified the petition. J.B.L. pleaded true to the petition and elected to go to a jury for disposition. After a two-day trial, the jury assessed disposition at thirty years confinement.

## Issue on Appeal

J.B.L. argues in one issue that the determinate sentencing statute, as applied in this case, violates the Due Process Clause of the Fifth Amendment of the United States Constitution by increasing his punishment without allowing him to present the enhancement to the jury for consideration beyond a reasonable doubt.

## Standard of Review

When reviewing an attack upon the constitutionality of a statute, we presume the statute is valid and the legislature acted reasonably in enacting the statute. *Rodriquez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The individual challenging the statute bears the burden of proving it

is unconstitutional. *Id*. We must uphold the statute if there is a reasonable construction that will render the statute constitutional and carry out the legislative intent. *Ex parte Flores*, 130 S.W.3d 100, 106 (Tex. App.—El Paso 2003, pet. ref'd).

*Analysis*

When a juvenile commits a felony, the juvenile court may impose either an indeterminate sentence or a determinate sentence. Section 54.04. If a juvenile commits an aggravated robbery, under an indeterminate sentence, he would spend at least one year confined in the Texas Youth Commission, and the Texas Youth Commission would be required to release him no later than his nineteenth birthday. Section 54.04(d)(2); TEX. HUM. RES. CODE ANN. § 61.084(e) (Vernon Supp. 2008).[4] However, when a juvenile is charged with aggravated robbery, the State also has the option to file a petition for determinate sentencing with the grand jury. TEX. FAM. CODE ANN. § 53.045(a)(7) (Vernon 2008). If the grand jury certifies the petition for determinate sentencing, a jury may sentence the juvenile to commitment to the Texas Youth Commission with a possible transfer to the Texas Department of Criminal Justice for a term not to exceed forty years. Section 54.04(d)(3). The following steps must be taken in order for a court to impose a determinate sentence: (1) the State's petition must allege that the juvenile committed one of the crimes enumerated in TEX. FAM. CODE ANN. § 53.045(a) (Vernon 2008); (2) the State must refer the petition to the grand jury; (3) the grand jury must approve the petition by a vote of at least nine jurors; (4) the approval by the grand jury must be certified to the court; and (5) the certification must be entered in the record. TEX. FAM. CODE ANN. §§ 53.045, 54.04(d)(3) (Vernon 2008); *In re S.J.*, 977 S.W.2d 147, 149 (Tex. App.—San Antonio 1998, no pet.).

A juvenile who receives a determinate sentence is initially committed to the Texas Youth Commission's custody. Section 54.04(d)(3). However, when the juvenile turns sixteen but before he turns nineteen, the Texas Youth Commission may refer the juvenile to the committing court for a transfer hearing. TEX. HUM. RES. CODE ANN. § 61.079(a) (Vernon Supp. 2008). At the transfer

---

[4]J.B.L. argues in his brief that he may be confined to the Texas Youth Commission until his twenty-first birthday; however, in 2007, the 80th legislature amended the statute for the Texas Youth Commission to terminate its control once the juvenile turns nineteen instead of twenty-one. This amended statute became effective June 8, 2007. J.B.L. was sentenced to the Texas Youth Commission on June 13, 2007. *See* Act of June 8, 2007, 80th Leg., R.S., ch. 263, §§ 53, 78, 2007 Tex. Sess. Law Serv. 421, 449 (Vernon) (codified in TEX. HUM. RES. CODE ANN. § 61.084(e) (Vernon Supp. 2008)).

hearing, the committing court has the authority to (1) return the juvenile to the Texas Youth Commission with approval for the release of the juvenile under supervision, (2) return the juvenile to the Texas Youth Commission without the approval for the release of the juvenile under supervision, or (3) order the transfer of the juvenile to the custody of the Texas Department of Criminal Justice, Institutional Division. TEX. FAM. CODE ANN. § 54.11(i), (j) (Vernon 2008). An appeal may be taken from an order transferring the juvenile to the Texas Department of Criminal Justice, Institutional Division. TEX. FAM. CODE ANN. § 56.01(c)(2) (Vernon 2008). If the Texas Youth Commission does not refer the juvenile to the committing court for a transfer hearing before his nineteenth birthday, the Commission must either discharge the juvenile from its custody or transfer the juvenile to the Texas Department of Criminal Justice, Division of Pardons and Paroles, to serve out the juvenile's sentence on parole. TEX. HUM. RES. CODE ANN. § 61.084(e), (g) (Vernon Supp. 2008).

J.B.L. argues that his due process rights were violated because, rather than having a jury determine beyond a reasonable doubt whether his punishment should be increased from an indeterminate sentence to a determinate sentence, the grand jury certified the petition for determinate sentencing based upon probable cause. J.B.L. argues that the jury should have had an opportunity to consider an indeterminate sentence. At the disposition hearing, the probation officer, Amechi Esekody, testified on direct examination that her recommendation was that J.B.L. be committed to the Texas Youth Commission for an indeterminate sentence. J.B.L. cross-examined Esekody as to why he would be a candidate for indeterminate sentencing.

> Q. Is it safe for this jury to conclude, then, that [J.B.L.]'s behaviors are more associated with child-like behaviors than adult behaviors and that's why you're recommending he go to the youth commission for an indeterminate time period? Can we draw that conclusion or not?
>
> A. It would be difficult to draw that conclusion based on the fact of his extensive record in the juvenile justice system.

On redirect, the State clarified with the witness that it was seeking a determinate sentence. J.B.L. objected to that line of questioning, stating that the jury should have the option of sentencing him to an indeterminate sentence as a lesser included type of sentence. The trial court overruled the objection. J.B.L. did not present an instruction for an indeterminate sentence in the charge.

4

The jury was instructed that, in order to assess a disposition, it must find that the juvenile is in need of rehabilitation or that the protection of the public requires disposition be made. The jury was charged that the disposition for aggravated robbery was commitment to the Texas Youth Commission, with a possible transfer to the Texas Department of Criminal Justice, Institutional Division, or the Division of Pardons and Paroles for no more than forty years. The jury was instructed that, if it assessed the disposition for a term of not more than ten years, then it could place the juvenile on probation as an alternative to commitment to the Texas Youth Commission. The jury was also instructed that it could not have a disposition placing the juvenile on probation outside the juvenile's home unless it found beyond a reasonable doubt that the juvenile's home did not provide the quality of care and level of support and supervision that the juvenile needed to meet the conditions of probation.

The jury found beyond a reasonable doubt that J.B.L. was in need of rehabilitation or that the protection of the public required disposition be made. The jury assessed punishment at thirty years confinement and, therefore, did not consider probation for J.B.L.

On appeal, J.B.L. relies upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the appellant fired several .22 caliber bullets into the home of an African-American family that had moved into a previously all-white neighborhood. *Id.* at 469. Apprendi admitted to the shooting and stated that he did not want the family in the neighborhood because they were black. *Id.* He was charged with twenty-three different counts alleging shootings on four different dates and the unlawful possession of various weapons. *Id.* None of the counts referred to the hate crime statute or that Apprendi acted for a racially biased purpose. Apprendi entered into a plea bargain agreement in which he pleaded guilty to two counts of second degree possession of a firearm for an unlawful purpose and one count of the third degree offense of unlawful possession of an antipersonnel bomb. *Id.* at 469-70. The State agreed to drop the remaining twenty counts. The State reserved the right to request that the court impose an enhanced sentence on the ground that the offense was committed with a biased purpose, and Apprendi reserved the right to appeal the constitutionality of the hate crime statute. *Id.* at 470.

After Apprendi pleaded guilty, the State moved to enhance the sentence under New Jersey's hate crime statute. *Id.* The trial court found by a preponderance of the evidence that Apprendi's purpose in committing the crime was to intimidate the victim and that the crime was motivated by

racial bias. *Id*. at 471. The trial court sentenced Apprendi to twelve years confinement for one of the possession of firearm counts and to shorter concurrent sentences on the other counts. *Id.*

The United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The high court went on to say that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Id*.

*Apprendi* is distinguishable from the case before us in a number of ways. In *Apprendi*, the issue was that a factual determination authorizing an increase in punishment was not made by a jury on the basis of proof beyond a reasonable doubt. *Id.* at 469. Also in *Apprendi*, the appellant pleaded guilty to possession of a firearm for an unlawful purpose and unlawful possession of a prohibited weapon. However, there was no mention of the hate crime statute in the charging instrument. After Apprendi pleaded guilty, the State sought to increase the punishment by filing a motion to enhance the sentence under the hate crime statute. Here, there are no facts that change the range of punishment. Rather, once the State decided to file a petition for determinate sentencing, the range of punishment was set. There was not an enhancement in punishment. The range of punishment did not increase based on any facts that were not presented to the jury. All the facts were presented to the jury when it decided J.B.L.'s disposition.

J.B.L. also argues that the determinate sentencing statute increases the stigma associated with his activity by changing the consequences of such criminal activity from a confidential, privileged period of juvenile supervision to a first degree felony conviction on J.B.L.'s public adult record. The Due Process Clause of the Fifth Amendment of the United States Constitution requires that any fact that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. *Jones v. United States*, 526 U.S. 227, 243 (1999). This case met all of those requirements. The petition for determinate sentencing acts as an indictment. Section 53.045(d); *In re R.L.H.*, 771 S.W.2d 697, 699 (Tex. App.—Austin 1989, writ den'd). A petition, acting as an indictment, was presented to the grand jury, all the facts were submitted to the jury, and all the facts were proven beyond a reasonable doubt.

6

Whether J.B.L. will serve any time in the Texas Department of Criminal Justice, Institutional Division, hinges on the required transfer hearing. J.B.L. has not been transferred to the Texas Department of Criminal Justice, Institutional Division, and the required referral for a transfer hearing has not been made to the committing court. If the committing court does issue an order transferring J.B.L. to the Texas Department of Criminal Justice, Institutional Division, then he may appeal that order. However, because J.B.L. may not serve any time in the Texas Department of Criminal Justice, Institutional Division, his claims are not ripe for review. An opinion on J.B.L.'s due process claims at this time would be wholly advisory. *In re S.B.C.*, 805 S.W.2d 1, 5 (Tex. App.—Tyler 1991, writ den'd). This court has no authority to render advisory opinions. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985). J.B.L.'s issue on appeal is overruled.

*Conclusion*

We affirm the judgment of the trial court.


RICK STRANGE

JUSTICE


March 5, 2009

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.