**In the Matter of S.J.**

No. 04–97–00697–CV.

Court of Appeals of Texas,
San Antonio.

June 17, 1998.

Collis White, George Scharmen, San Antonio, for Appellant.

Enrico B. Valdez, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before RICKHOFF, DUNCAN and ANGELINI, JJ.

## OPINION

DUNCAN, Justice.

After the trial court denied S.J.'s motion to suppress, S.J. pled "true" to aggravated robbery with a deadly weapon and received a fifteen-year determinate sentence. On appeal, S.J. claims the trial court was without jurisdiction to impose a determinate sentence because the grand jury did not approve the State's petition, and the court erred in denying his motion to suppress an in-court identification. We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

S.J., the gunman in the four-man robbery of a convenience store on the afternoon of May 19, 1997, was apprehended the following morning and taken back to the store in the back seat of a patrol car. When S.J. was removed from the car, the clerk identified him from a distance of approximately twenty feet. The clerk also later identified S.J. in a photo line-up. As a result, S.J. was charged with delinquent conduct for committing the offense of aggravated robbery with a deadly weapon. After the trial court denied S.J.'s motion to suppress the identification evidence, he pled "true" and received a fifteen-year determinate sentence.

### GRAND JURY CERTIFICATION OF DELINQUENCY PETITION

In his first point of error, S.J. contends the trial court did not have jurisdiction to impose a determinate sentence because the record does not establish the State properly presented its petition to the grand jury and obtained its approval. We disagree.

#### *Scope and Standard of Review*

■ S.J. argues his first point of error is governed by a factual sufficiency standard of review, citing *NCNB Texas Nat'l Bank v. Anderson*, 812 S.W.2d 441, 443–44 (Tex. App.—San Antonio 1991, no writ). In *Anderson*, this court held there was legally and factually sufficient evidence to support the trial court's findings of fact relating to a special appearance filed pursuant to Rule 120a, TEX.R.CIV. P. *Id.* at 445. In this case, on the other hand, we confront a question of law—whether the trial court correctly applied the governing law to the undisputed facts established by documents in the clerk's record. We review questions of law de novo. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

#### *Discussion*

■ A "determinate sentence" may be assessed against a juvenile who commits aggravated robbery. TEX.FAM.CODE ANN. § 53.045(a)(6) (Vernon Supp.1998). If a determinate sentence is imposed, the juvenile may be committed in the Texas Youth Commission until his eighteenth birthday and then transferred to prison. *Id.* § 54.04(d)(3). However, a juvenile court may not impose a determinate sentence unless (1) the district attorney refers the petition to the grand jury; (2) the grand jury approves the petition and certifies its approval; (3) the grand jury's approval of the petition is certified to the juvenile court; and (4) the grand jury's certification is filed in the record. *Id.* §§ 53.045(a), 53.045(d), 54.04(d)(3) (Vernon 1996). If the State fails to obtain and file the requisite grand jury certification, the trial court is without jurisdiction to impose a determinate sentence. *Id.* § 54.04(d)(2)-(3) (Vernon Supp.1998); *In re S.D.W.*, 811 S.W.2d 739, 744 (Tex.App.—Houston [1st Dist.] 1991, no writ). Conversely, when these requirements are met, the petition is deemed an indictment for purposes of later transferring the juvenile to prison or the parole board. *Id.* § 53.045(d); *see In re J.G.*, 905 S.W.2d 676, 680 (Tex. App.—Texarkana), *writ denied per curiam*, 916 S.W.2d 949 (Tex.1995); *In re D.S.*, 833 S.W.2d 250, 252–53 (Tex.App.—Corpus Christi 1992, writ denied). Grand jury certification in a juvenile case is thus obtained in the same manner and serves the same legal purpose as an indictment in a criminal case. We therefore turn to this body of law to resolve S.J.'s point of error.

■ "An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense." TEX. CONST. art. V, § 12(b). "Presentment of an indictment vests the court with jurisdiction of the cause," *id.*, and provides a criminal defendant with sufficient notice to prepare a defense. *Cook v. State*, 902 S.W.2d 471, 476 (Tex.Crim.App.1995). An indictment from a grand jury is thus a necessary precursor to a trial court's subject matter jurisdiction. *See In re A.D.D.*, 974 S.W.2d 299, 302–03 (Tex.App.—San Antonio 1998, n.p.h.) ("subject matter jurisdiction refers to the court's power to hear a particular type of suit") (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996)). However, if "a written instrument . . . accuses someone of a crime with enough clarity and specificity to

identify the penal statute under which the State intends to prosecute," the instrument is an indictment "even if the instrument is otherwise defective." *Duron v. State*, 956 S.W.2d 547, 550–51 (Tex.Crim.App.1997); *State v. Smith*, 957 S.W.2d 163, 164–65 (Tex. App.—Austin 1997, no writ). If there is no evidence to show that an interlineated or altered indictment was changed before or after it was returned, "there is a presumption of regularity" and the alteration is deemed to have been made before the grand jury returned the indictment. *Hardeman v. State*, 552 S.W.2d 433, 436 (Tex.Crim.App. 1977).

In this case, the record contains a document entitled "GRAND JURY CERTIFICATE OF APPROVAL," which states:

On the *12th* day of *September*, A.D., 1996, STEVEN C. HILBIG, Criminal District Attorney, by and through the undersigned Assistant Criminal District Attorney, presented an Original Petition Alleging Delinquent Conduct, pursuant to Section 53.045 of the Texas Family Code, for the Bexar County Grand Jury's approval on the above-referenced cause in which [S.J.] has been charged with AGGRAVATED ROBBERY, which is alleged to have been committed on or about the 19TH day of MAY, A.D., 1996.

After considering the facts and circumstances relating to the charge against [S.J.] the Bexar County Grand Jury APPROVES / ~~DISAPPROVES~~ the Original Petition Alleging Delinquent Conduct and certifies the same to the Juvenile Court.

*September*
SIGNED this *12* day of *~~July~~*, A.D., 1996.

The certificate is signed by the grand jury foreperson and two assistant criminal district attorneys. The record also contains a certificate signed by the presiding criminal district court judge. This certificate states:

*September*
On the *12* day of *~~July~~*, A.D., 1996, STEVEN C. HILBIG, Criminal District Attorney, by and through the undersigned Assistant Criminal District Attorney, presented an Original Petition Alleging Delinquent Conduct, pursuant to Section 53.045 of the Texas Family Code, for the Bexar County Grand Jury's Approval on the above-referenced cause in which [S.J.] has been charged with AGGRAVATED ROBBERY, which is alleged to have been committed on or about the 19TH day of MAY, A.D., 1996.

After considering the facts and circumstances relating to the charge against [S.J.], the Bexar County Grand Jury APPROVED the State's Original Petition Alleging Delinquent Conduct and same is certified to the Juvenile Court of Bexar County, Texas, by the presiding Criminal District Court.

SIGNED this *13th* day of *September*, A.D., 1996.

From these certificates, S.J. concludes "the record is not clear whether the district attorney's petition was signed by the same grand jury foreperson for the grand jury to which

the original petition allegedly was presented" and, as a result, "there is no clear showing that a grand jury actually considered the state's petition for a determinate sentence in this case." We disagree.

On its face, the Grand Jury Certificate of Approval states the grand jury considered and approved the State's Original Petition on September 12, 1996; it is signed by the grand jury foreperson; it is consistent with the presiding judge's certification, which is dated September 13, 1996 and which states the grand jury considered and approved the State's petition on September 12, 1996; and both certificates are consistent with the September 16, 1996 filing date of the State's original petition. Nor is there any *evidence* that the interlineations occurred after the documents were signed; there is, at best, rank speculation by S.J.'s attorney. In these circumstances, the "presumption of regularity" controls, and the interlineation is deemed to have been made before the documents were signed and filed. *See Hardeman*, 552 S.W.2d at 436. The trial court therefore correctly found the State's petition was "properly referred to and subsequently approved by the Grand Jury of Bexar County and said approval was certified to this Court...." We overrule S.J.'s first point of error.

### MOTION TO SUPPRESS

In his second point of error, S.J. argues the trial court erred in denying his motion to suppress the clerk's in-court identification because it was tainted by impermissibly suggestive out-of-court pretrial identifications. We again disagree.

### Scope and Standard of Review

Because there is no civil equivalent to a suppression ruling, we employ the scope and standard of review used in criminal cases to review a juvenile court's ruling on a motion to suppress. When a trial court's suppression ruling is not relitigated at trial, the scope of review is limited to the evidence admitted at the suppression hearing. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996); *see*

*also McGlynn v. State*, 704 S.W.2d 18, 20 (Tex.Crim.App.1982). For this reason, we do not consider the portions of the clerk's record referenced by S.J. but not entered into evidence at the suppression hearing.

The applicable standard of review is the abuse of discretion standard, under which we accord a trial court's resolution of questions of historical fact substantial deference if they are supported by the record, while we review the trial court's rulings on questions of law and its application of the law to the facts de novo, unless the "ultimate resolution of [the] question[ ] turns on an evaluation of credibility and demeanor." *Loserth v. State*, 963 S.W.2d 770, 772 (Tex.Crim.App.1998); *cf. Walker*, 827 S.W.2d at 839–40.

### Discussion

An in-court identification is inadmissible if, "considering the totality of the circumstances, 'the ... identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Loserth*, at 772 (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). If the procedure was impermissibly suggestive, we must "weigh[ ] against the corrupting effect of any suggestive identification procedure" (1) "[t]he opportunity of the witness to view the [defendant] at the time of the crime;" (2) "[t]he witness' degree of attention;" (3) "[t]he accuracy of the witness' prior description of the [defendant];" (4) "the level of certainty demonstrated by the witness at the confrontation;" and (5) "[t]he length of time between the crime and the confrontation." *Loserth*, at 772 (citing *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

For purposes of resolving S.J.'s complaint, we assume, and do not decide, the pretrial identification procedures were impermissibly suggestive. We nonetheless hold the trial court properly denied S.J.'s motion because the procedures did not give rise to a substantial risk of misidentification. To the contrary, while the clerk testified that a sheriff's deputy told the clerk they thought they had caught "the guy" the morning after the rob-

bery, he also testified he first viewed S.J. holding a gun on him for five to ten minutes from a distance of three to four feet in a well-lighted store and, after the robbery, he described S.J. in great detail—about 5'-6" tall, weighing 120–130 pounds, and wearing a black baseball hat, dark glasses, a white sleeveless t-shirt, a gold chain, and black pants that were "like sweats but ... plastic like." The clerk also testified he positively and unequivocally identified S.J. as the gunman from a distance of about twenty feet when S.J. was removed from the police car the morning after the robbery.[1] Moreover, when asked if this identification of S.J. as the gunman was based on anything the officer told him, the clerk responded:

> No. It was based on the fact that he still had on the same outfit that he had on the night before minus the glasses and the hat. He still had the same gold chain, the same sleeveless white t-shirt, the same black pants that the individual—that the guy had on the night before that robbed me. That's what I based it on, the identification.

Five days after the robbery, the clerk again identified S.J. in the first photographic lineup shown to him. The lineup consisted of a group of six color photographs of slender Hispanic males, all with the same hair color and light moustache as S.J.'s. And, while S.J. emphasizes that he was the only pictured male with short hair and wearing a gold chain and a "tank-top sleeveless type of shirt," the clerk testified that when he "looked at this group of pictures, [he] immediately recognized [S.J.]" as the man who robbed him at gunpoint.[2]

In light of this evidence, we hold "the corrupting effect of any suggestive identification procedures" did not give "rise to a very substantial likelihood of irreparable misidentification." To the contrary, the clerk first saw S.J. for five to ten minutes, under opti-

mal conditions, for a protracted period of time, and in circumstances that were attention-riveting; his identification of S.J. the following morning was based upon S.J.'s "outfit," not anything told him by law enforcement officers; and his identification of S.J. in the photo array five days after the robbery was likewise immediate and unequivocal. We therefore overrule S.J.'s second point of error.

### CONCLUSION

The trial court acquired jurisdiction to impose a determinate sentence with the facially-regular certificates signed by the foreperson of the grand jury and the presiding judge of the criminal district courts, and it correctly refused to suppress the clerk's in-court identification of S.J. as the gunman during the robbery. We therefore affirm the trial court's judgment.

---

1. We recognize S.J.'s father testified that a police officer told him the clerk was unable to identify S.J. the morning after the robbery. However, the officer who reportedly made these statements did not recall this conversation, and the credibility of these witnesses was for the trial judge to resolve.

2. S.J. makes much of the fact that the store clerk had a stroke after the robbery and before testifying at the identification hearing. However, there is no evidence the clerk's vision was diminished at the time he identified S.J. shortly after the robbery or in the photographic lineup. And, at the identification hearing, the clerk testified the stroke was "mild," and he had no hearing or vision problems at that time.