**In the MATTER OF S.C.**

No. 04-16-00567-CV

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: May 31, 2017

APPELLANT ATTORNEY: Anthony Colton, Attorney at Law, P.O. Box 5504, San Antonio, TX 78201.

APPELLEE ATTORNEY: Andrew Warthen, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, TX 78205, Nicholas A. LaHood, District Attorney, Bexar County, 300 Dolorosa, Suite 4025, San Antonio, TX 78205.

Sitting: Karen Angelini, Justice, Luz Elena D. Chapa, Justice, Irene Rios, Justice

## OPINION

Opinion by: Luz Elena D. Chapa, Justice

The trial court adjudicated S.C.,[1] a juvenile, delinquent for burglary of a habitation and placed him on probation for twelve months. On appeal, S.C. argues the trial court erred by not suppressing evidence of oral statements he made while he was in custody and evidence obtained from an illegal search of his home. Although we conclude S.C. was not in custody, we hold the search of his home was unreasonable. We therefore reverse the trial court's judgment and remand this case for further proceedings.

### BACKGROUND

On a Friday evening in 2015, San Antonio Police Department Officer Charles Kholleppel received a report of a burglary on the west wide of San Antonio. He spoke with a person who witnessed the burglary, and this witness personally knew the individuals who broke into the house. The witness identified them as S.C. and his brother, V.C., and told Officer Kholleppel where they lived. The stolen property included a video game console, $10,000 in cash, and other "small items."

Officer Kholleppel went to S.C.'s home and spoke with a woman who said she was S.C.'s mother.[2] She told Officer Kholleppel that S.C. was playing basketball down the street. Officer Kholleppel found S.C. and asked him several questions. S.C. told Officer Kholleppel he was fifteen years old and in the eighth grade. Officer Kholleppel and

---

1. *See* TEX. R. APP. P. 9.8(c) (requiring the use of aliases in juvenile appeals to refer to a minor and other members of the minor's family).

2. The record is unclear as to whether the woman who said she was S.C.'s mother was S.C.'s biological mother, N.C., whose parental rights had been terminated, or S.C.'s biological grandmother, G.C., who is S.C.'s adoptive mother. On the audio recording, the woman at the house states the house is her mother's house and her mother lives there, but her mother was not home. However, G.C. testified at the suppression hearing, stating she was S.C.'s grandmother, she was present at the house during the incident, an officer "took [S.C.] to his vehicle by himself away from me," and they were scared. A pre-disposition report describes S.C.'s living situation, and states the following individuals live with S.C.: S.C.'s grandmother, G.C. (age 73), S.C.'s mother N.C. (age 34), and S.C.'s brother V.C. (age 18). We refer to the woman at S.C.'s house as his mother based on the facts known to the officers at the time. *See Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011) (explaining we apply an objective standard based on the facts known to the officers at the time of alleged unlawful conduct).

S.C. went back to the house, and Officer Kholleppel asked him about the burglary in the presence of his mother. During Officer Kholleppel's discussion with S.C. and his mother, two other SAPD officers arrived.

Officer Kholleppel observed S.C. "jumping around," "moving his hands around," and being "fidgety," and he therefore placed S.C. in handcuffs. He told S.C. he was "all over the place" and he was only being detained and not under arrest. Officer Hector Perez, one of the other officers who arrived, also told S.C. he was only being detained. Officer Kholleppel placed a handcuffed S.C. in the back of Officer Perez's patrol car and asked S.C.'s mother for consent to enter the house. S.C's mother expressly refused numerous times to allow the officers to go inside the house without a warrant. During their conversation with S.C. and his mother, the officers repeatedly stated the burglary victim would not press charges if all of the property were returned.

Approximately eight minutes after being placed in the patrol car, and after S.C.'s mother refused multiple times to allow the officers in the house, Officer Perez approached his patrol car and asked S.C. whether S.C. "wanted to talk" to him and S.C. stated he did. Officer Perez told S.C. that if he did not return the stolen property and the property was found inside the house, his grandmother, who owned the house, could be arrested. S.C. then told Officer Kholleppel the stolen property was inside the house. According to Officer Kholleppel, S.C. agreed to show him where the stolen property was.

Officer Perez removed S.C. from the patrol car and then removed the handcuffs. Officer Kholleppel followed S.C. into the house, and told his mother that S.C. was going to show him where the stolen property was to "save y'all a headache." S.C.'s mother did not further object at that time. Officer Kholleppel followed S.C. into his bedroom, where S.C. retrieved an Xbox, a video game, and DVDs, but not the $10,000 in cash. S.C. remained at the house and was not further detained or arrested that evening. An SAPD detective later arrived at the house and took photos of and fingerprints from the items. Several other SAPD officers searched for V.C., who had allegedly absconded with the $10,000 in cash.

The State filed a petition alleging S.C. was a juvenile who had engaged in the delinquent conduct of burglary of a habitation. S.C. filed a motion to suppress, alleging the State obtained evidence in violation of state and federal law. S.C. argued he made oral statements during a custodial interrogation without having been taken before a magistrate and advised of his rights, and SAPD officers obtained evidence from an unreasonable warrantless search. At the suppression hearing, the trial court denied S.C.'s motion. S.C. then pled true to the delinquency allegation, and the trial court signed orders of adjudication and disposition. S.C. timely filed this appeal.

## STANDARD OF REVIEW

When reviewing a trial court's ruling on a juvenile's motion to suppress, we employ the standard of review used in criminal cases. *In re S.J.*, 977 S.W.2d 147, 151 (Tex. App.—San Antonio 1998, no pet.). Under this standard, "we accord a trial court's resolution of questions of historical fact substantial deference if they are supported by the record." *Id.* "[W]e review the trial court's rulings on questions of law and its application of the law to the facts de novo, unless the ultimate resolution of the question turns on an evaluation of credibility and demeanor." *Id.* (internal quotation marks omitted).

## S.C.'s Oral Statements

■ S.C. argues the trial court erred by not suppressing evidence regarding oral statements he made because he was in custody and no officer informed him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[3] The "constitutional privilege against self-incrimination applicable to an adult applies equally in the case of a juvenile." *In re L.M.*, 993 S.W.2d 276, 287 (Tex. App.—Austin 1999, pet. denied) (citing *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)). The constitutional privilege against self-incrimination entails that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. Because no officer read S.C. his *Miranda* rights, S.C.'s privilege against self-incrimination requires suppression of evidence only if he was in custody when he made those statements. *See id.; see also In re D.A.R.*, 73 S.W.3d 505, 509-10 (Tex. App.—El Paso 2002, no pet.).

■ A person is in custody in at least four general situations: "(1) when the suspect is physically deprived of his freedom in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). "In the first, second, and third situations, the restrictions upon freedom of movement must rise to the degree associated with an arrest as opposed to an investigative detention." *Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.). "[S]ituation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Dowthitt*, 931 S.W.2d at 255. "The determination of custody must be made on an ad hoc basis, after considering all of the (objective) circumstances," including the juvenile's age. *Id.; In re J.T.M.*, 441 S.W.3d 455, 461 (Tex. App.—El Paso 2014, no pet.).

■ There is no bright-line rule establishing a person who is handcuffed is per se in custody. *Campbell*, 325 S.W.3d at 234. Handcuffing for purposes of an investigative detention—including investigation, maintenance of the status quo, and officer safety—does not necessarily give rise to a custodial interrogation. *Id.* "It is also important to consider whether the officer actually conducts an investigation after seizing the suspect—that is, whether the officer briefly questions the suspect about his identity, his reason for being in the area, or similar reasonable inquiries of a truly investigatory nature...." *Id.* A suspect who is temporarily handcuffed and placed in the back of a patrol car for purposes of an investigatory detention is not necessarily in custody, particularly when the officer tells the suspect he is not

---

**3.** S.C. also argues his oral statements were inadmissible because a magistrate did not warn him of his rights under section 51.095(a)(1) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 51.095(a)(1) (West 2014). A magistrate's warning is required only for a child's written statements. *See id.* Evidence of a child's oral statements may be admissible without a magistrate's warning. *See id.* § 51.095(a)(2), (b)(1).

under arrest. *Koch v. State*, 484 S.W.3d 482, 490-91 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Hauer v. State*, 466 S.W.3d 886, 891-93 (Tex. App.—Houston [14th Dist.] 2015, no pet.). If an officer tells an individual he is not under arrest, this is the "[m]ost important" circumstance off-setting physical restraint in determining whether the individual is in custody under *Miranda*. *Howes v. Fields*, 565 U.S. 499, 515-16, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012).

When S.C. was handcuffed and placed in the back of the patrol car, he was physically deprived of his freedom in a significant way and a reasonable person of his age would have believed his freedom of movement had been significantly restricted. *See Dowthitt*, 931 S.W.2d at 255. The officers also had probable cause to arrest S.C. based on the witness's statement that S.C. and V.C. broke into and stole property from a house. *See id.* However, Officer Kholleppel placed S.C. in handcuffs and put him in the back of the patrol car because he observed S.C. was "jumping around" and "fidgety," and Officer Kholleppel was concerned S.C. "was going to maybe take off." It appears from the record that Officer Kholleppel told S.C. he was "all over the place" before placing him in handcuffs.[4] Both Officer Kholleppel and Officer Perez told S.C. he was only being detained and not arrested. Officer Kholleppel also told S.C. multiple times that the property owner would not press charges if all of the stolen property were returned. He repeatedly told S.C. he had a choice about "doing things the easy way," which was to talk to the officers, or "the hard way," which was having the officers obtain a warrant. Approximately eight minutes

after being placed in the patrol car, S.C. stated he was willing to talk to the officers, and Officer Kholleppel immediately let S.C. out of the patrol car and removed the handcuffs.

Applying an objective standard, the totality of the circumstances shows the purpose of handcuffing S.C. and placing him in the back of the patrol car was to maintain the status quo for investigatory purposes. The officers informed S.C. he was not under arrest. They explained to S.C. that he was only being detained, the property owner would not press charges if he returned the stolen property, and why they placed him in handcuffs. Considering the totality of the circumstances, the temporary restriction on S.C.'s freedom of movement did not rise "to the degree associated with an arrest as opposed to an investigative detention" and would not lead a reasonable person of his age to believe that he was under arrest. *See Campbell*, 325 S.W.3d at 233; *see also Koch*, 484 S.W.3d at 490-91; *Hauer*, 466 S.W.3d at 891-93; *In re J.T.M.*, 441 S.W.3d at 461. Because S.C. was not in custody, S.C.'s privilege against self-incrimination does not require suppression of evidence regarding his oral statements.

### EVIDENCE OBTAINED AS A RESULT OF OFFICER KHOLLEPPEL'S ENTRY INTO S.C.'S HOME

 S.C. argues the trial court erred by not suppressing evidence obtained from Officer Kholleppel's entry into his home because the entry violated his rights. In a juvenile proceeding, a trial court must suppress evidence obtained in violation of a defendant's rights under the

---

4. It is unclear from the audio recording whether Officer Kholleppel made this statement to inform S.C. why he was being placed in handcuffs or to point out the inconsistencies in statements S.C. had made. Under our

standard of review, "[t]he prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it." *See Wade v. State*, 422 S.W.3d 661, 666-67 (Tex. Crim. App. 2013).

constitutions or laws of Texas or of the United States. Tᴇx. Fᴀᴍ. Cᴏᴅᴇ. Aɴɴ. § 51.17(c) (West 2014); Tᴇx. Cᴏᴅᴇ Cʀɪᴍ. Pʀᴏᴄ. Aɴɴ. art. 38.23(a) (West 2005). "Like an adult, a juvenile is protected from an unreasonable search by the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution." *In re A.D.D.*, 974 S.W.2d 299, 306 (Tex. App.—San Antonio 1998, no pet.). These provisions "are the same in all material aspects." *Heitman v. State*, 815 S.W.2d 681, 682 (Tex. Crim. App. 1991).

 "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Thus, the ultimate "touchstone" of any Fourth Amendment analysis is reasonableness. *Id.*; *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). To determine reasonableness in this context, courts conduct a balancing test, "which is rooted in traditional standards of reasonableness [and] requires ... weigh[ing] the promotion of legitimate governmental interests against the degree to which [the search] intrudes upon an individual's privacy." *State v. Villarreal*, 475 S.W.3d 784, 808 (Tex. Crim. App. 2014) (internal quotes omitted). We apply an objective standard that views the officer's conduct in light of the facts and circumstances known to the officer at the time of the search. *See Meekins*, 340 S.W.3d at 459. A warrantless police entry into a person's home is a presumptively unreasonable search "unless the entry falls within an exception to the warrant requirement." *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010).

 A party seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to prove there was a search without a warrant. *See Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Once that initial burden is met, the State has the burden to prove the warrantless search was reasonable. *Id.* It is undisputed Officer Kholleppel entered the house without a warrant. Thus, the State had the burden to prove Officer Kholleppel's entry into the house was reasonable. *See id.* The State argues Officer Kholleppel's search was reasonable because S.C. voluntarily consented to the officer entering his home.

 Voluntary consent is generally an exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A police officer may obtain voluntary consent from either the suspect or a third party who has actual or apparent authority to consent to the search. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). "[T]he typical third party consent case [is when] the police solicit the consent of *A* in order to search an area in which *B* has a privacy interest for the express purpose of finding evidence against *B*." 4 W. LaFᴀᴠᴇ, Sᴇᴀʀᴄʜ ᴀɴᴅ Sᴇɪᴢᴜʀᴇ § 8.3(a) (5th ed. 2016). Typically, third party consent cases arise when the suspect is not present and objecting to the search. *See id.* Because "reasonableness" is the ultimate touchstone for any Fourth Amendment analysis, " 'reasonableness' is also the touchstone for determining voluntary consent to search." *Meekins*, 340 S.W.3d at 459.

The Supreme Court of the United States has addressed the reasonableness of a search when there is "disputed consent," which is when one resident of a home expressly consents to the search and another resident is present and expressly objects to the search. *Georgia v. Randolph*, 547 U.S. 103, 120, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006). In *Randolph*, an officer obtained a wife's consent to search

a house for evidence of her husband's drug use, but the husband, who was present, unequivocally objected. *Id.* at 107, 126 S.Ct. 1515. The Supreme Court held the warrantless search was invalid "as to him" (the husband) given the great significance of "widely shared social expectations." *Id.* at 111, 120, 126 S.Ct. 1515. The Court explained that "[w]ithout some very good reason, no sensible person would go inside" a residence "when a fellow tenant stood there saying, 'stay out.'" *Id.* at 113, 126 S.Ct. 1515.

The State notes the Court in *Randolph* repeatedly emphasized that when one resident is present and objecting to a search and another resident gives consent to the search, the search is not reasonable *as to the objecting party. See id.* at 106, 120, 122, 126 S.Ct. 1515. The State implies the Court thereby indicated the non-objecting resident's voluntary consent would make the search reasonable as to that party. But the Court in *Randolph* did not address whether a suspect who voluntarily consented to a search may rely on another physically present resident's objection to a search because those were not the facts before the Court. *See id.* The Court did suggest, however, that the reasonableness of an officer's search when there is disputed consent may turn on whether "the people living together fall within some recognized hierarchy, like a household of parent and child or barracks housing military personnel of different grades." *Id.* at 114, 126 S.Ct. 1515.

Several courts in other jurisdictions have relied upon *Randolph*'s "recognized hierarchy" language to resolve disputed consent cases involving a parent and minor child. These courts have held the search of the child's room or belongings is reasonable when the parent consents, even if the minor child is present and objecting to the search. *In re D.C.*, 188 Cal.App.4th 978,

115 Cal.Rptr.3d 837, 842-43 (2010); *State v. S.B.*, 758 So.2d 1253, 1255 (Fla. 4th Dist. Ct. App. 2000); *see In re Tariq A-R-Y*, 347 Md. 484, 701 A.2d 691, 692 (1997); *Vandenberg v. Superior Court*, 87 Cal.Rptr. 876, 879-80, 8 Cal.App.3d 1048 (Ct. App. 1970). These courts generally rely on the superiority of parents' property rights to the entire residence and basic parental rights to make decisions for their minor children. *See In re D.C.*, 115 Cal.Rptr.3d at 842-43; *S.B.*, 758 So.2d at 1255; *In re Tariq A-R-Y*, 701 A.2d at 696; *Vandenberg*, 87 Cal.Rptr. at 879-80; *see also* LaFave, *supra*, § 8.4(b) ("[T]he parent's rights are 'superior to the rights of children who live in the house,' which means ... that the parent's consent would be effective even when the child was present and objecting.").

█ Although S.C.'s grandmother owned the house, Officer Kholleppel was informed the woman at the house was S.C.'s mother. If an officer's search is generally reasonable when a parent expressly consents to a search and her minor child expressly objects, then it logically follows that an officer's search is generally unreasonable when a parent objects to a search and her minor child expressly consents. Under Texas law, parents have "the right ... to make ... decisions of substantial legal significance concerning the child" and have the "duty of care, control, protection, and reasonable discipline of the child." Tex. Fam. Code. Ann. § 151.001(a)(2), (7) (West 2014). Furthermore, "the interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality). We must presume officers know the rights and duties of parents and understand the recognized hierarchy in the parent–child relationship. *See McMullen v. Hodge*, 5 Tex.

34, 39 (1849). We therefore conclude it is generally unreasonable for an officer to rely on a minor child's consent to search a home when the child's parent is present and has objected to the search. *See Randolph*, 547 U.S. at 120, 126 S.Ct. 1515; *cf. In re D.C.*, 115 Cal.Rptr.3d at 842-43; *S.B.*, 758 So.2d at 1255; *In re Tariq A-R-Y*, 701 A.2d at 696; *Vandenberg*, 87 Cal.Rptr. at 879-80; LaFave, *supra*, § 8.4(b).

The State argues Officer Kholleppel's entry into the house was reasonable because S.C. had the maturity to voluntarily consent to the search. This argument has no merit. Even if S.C. had the requisite maturity and capacity—in the absence of his mother's objection—to consent or object to a search, we must consider the totality of the facts and circumstances known to Officer Kholleppel at the time of the search. *See Meekins*, 340 S.W.3d at 458-59. We may not ignore that Officer Kholleppel knew S.C.'s mother was present and had repeatedly objected to the officers coming inside the house without a warrant. Given the recognized hierarchy of the parent–child relationship and a parent's right and duty to make legal and other significant decisions for a minor child, S.C.'s maturity alone is insufficient to make the search objectively reasonable. *See Randolph*, 547 U.S. at 120, 126 S.Ct. 1515; *see also Troxel*, 530 U.S. at 65, 120 S.Ct. 2054.

The State also argues S.C.'s mother impliedly consented to Officer Kholleppel's search by remaining silent after S.C. consented and contends S.C.'s mother was required to object again or "impede [the officers'] efforts." *See United States v. Starr*, 533 F.3d 985, 996 (8th Cir. 2008). In all of the "implied consent" cases the State cites, the suspect either initiated the investigation by calling the police or expressly consented to a search and failed to clarify or otherwise limit the scope of consent.[5] This case is distinguishable because S.C.'s mother did not call the police and she did not give express consent to search. She expressly objected numerous times to the officers entering the house without a warrant. Despite her objections, Officer Kholleppel entered the house. Although S.C.'s mother did not reurge her objection after Officer Kholleppel entered the house, Officer Kholleppel knew at the time he entered the house she had repeatedly objected to the officers entering the house without a warrant. We must view Officer Kholleppel's conduct in light of the facts and circumstances known to him at the time he entered the house, not the facts and circumstances known to him after he entered the house. *See Meekins*, 340 S.W.3d at 458-59; *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011) ("The entry into a residence by police officers is a 'search' for purposes of the Fourth Amendment."); *see also* Tex. Penal Code Ann. § 38.03(a), (b) (West 2016)

---

**5.** *See State v. Weaver*, 349 S.W.3d 521, 523-24 (Tex. Crim. App. 2011) ("Weaver ... gave [the officers] 'consent to look for [another suspect]'"); *Valtierra*, 310 S.W.3d at 444 ("Valtierra consented to have police officers enter his apartment to talk to Erica, a 13-year-old runaway."); *Brown v. State*, 856 S.W.2d 177, 179 (Tex. Crim. App. 1993) ("[A]ppellant called the police, his neighbor and his sister-in-law with news that he had just found his wife dead in the garage."); *see also Starr*, 533 F.3d at 992 ("Starr gave written consent for 'Marion Police Officers to conduct a complete search of [his] residence....'"); *United States v. Stapleton*, 10 F.3d 582, 583 (8th Cir. 1993) (noting driver of car in which defendant was a passenger gave officer consent to search car and appellant argued officer exceeded the scope of consent by searching a container in the car); *State v. Flippo*, 212 W.Va. 560, 564, 575 S.E.2d 170, 174 (2002) ("[T]he Fayette County 911 operator received a phone call from Mr. Flippo. During the call, Mr. Flippo stated that he and his wife had been attacked in their cabin.").

(providing it is a criminal offense to use force to impede an officer's lawful or unlawful search).

We conclude that under the specific facts of this case, Officer Kholleppel's entry into S.C.'s home was unreasonable. Officer Kholleppel first questioned S.C. in the presence of his mother. After handcuffing S.C. and placing him in the back of the patrol car, Officer Kholleppel asked S.C.'s mother for consent to search the house. As demonstrated by the audio recordings that the trial court admitted during the suppression hearing, she objected several times to the officers coming inside the house without a warrant. Officer Kholleppel then told Officer Perez that S.C.'s mother was not going to cooperate, and Officer Perez immediately went to S.C. and asked if he was willing to cooperate. Officer Kholleppel then relied on the consent of the minor child despite the numerous objections of his parent. There may exist cases in which a parent's objection would not be valid in the face of the child's consent. Cf. In re Tariq A-R-Y, 701 A.2d at 692. But this is not one of those cases. The State failed to satisfy its burden to prove Officer Kholleppel knew facts and circumstances that made his entry into S.C.'s home reasonable. We therefore hold the trial court erred by not suppressing the evidence obtained as a result of Officer Kholleppel's warrantless and unreasonable entry into S.C.'s home. See Meekins, 340 S.W.3d at 458-59.

## Conclusion

S.C. was not in custody when he made inculpatory oral statements to the officers. We conclude, however, Officer Kholleppel's search of the house was unreasonable. The trial court erred by not suppressing evidence obtained as a result of Officer Kholleppel's warrantless and unreasonable search. See Tex. Fam. Code. Ann. § 51.17(c);

Tex. Code Crim. Proc. Ann. art. 38.23(a). We therefore reverse the trial court's judgment and remand this case for further proceedings. See In re K.C.B., 141 S.W.3d 303, 309 (Tex. App.—Austin 2004, no pet.) (reversing and remanding for further proceedings when trial court erred by denying juvenile's motion to suppress before juvenile pled true to delinquency allegation).