

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

## No. 07-18-00218-CR

_____

### HOLDEN NORMAN, APPELLANT

### V.

### THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2017-412,687; Honorable William R. Eichman II, Presiding

August 1, 2019

## MEMORANDUM OPINION

Before QUINN, CJ., and PIRTLE and PARKER, JJ.

Appellant, Holden Norman, was convicted following a jury trial of the offense of

domestic assault and sentenced by the court to fifteen years confinement.[1]  On appeal,

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2019).  Appellant stipulated during trial that he had previously been convicted of an offense under chapter 22 of the Penal Code against a member of his household, family, or with whom he had a dating relationship in October 2013.  Accordingly, the charged offense was enhanced from a Class A Misdemeanor to a felony of the third degree.  *Id.* at (b)(2).  In addition, Appellant later pleaded "true" to a felony enhancement, making the offense punishable as a second degree felony.  *See* TEX. PENAL CODE ANN. § 12.42(a) (West 2019).  An offense punishable as a higher offense raises the level of punishment, not the degree of the offense.  *Oliva v. State,* 548 S.W.3d 518, 526-27 (Tex. Crim. App. 2016).

he raises three issues. He asserts the trial court erred by (1) admitting an inculpatory statement made in the course of a custodial interrogation undertaken by two law enforcement officers without administering the proper warnings, (2) denying a request for a jury instruction for a lesser-included offense, and (3) submitting the case to the jury when the evidence was insufficient. We affirm the trial court's judgment.

## BACKGROUND

In April 2018, an amended indictment alleged that on June 15, 2017, Appellant intentionally, knowingly, or recklessly caused bodily injury to Betty Norman, a member of his family/household, as described by sections 71.003 and 71.005 of the Texas Family Code, and an individual sixty-five years or older, by grabbing her with his hand or arm, or by causing her to strike a hard object, or striking her with a hard object. The amended indictment further alleged that in October 2013, in Lubbock County, Appellant had previously been convicted of an offense under chapter 22 of the Texas Penal Code against a member of Appellant's family or a member of his household or a person with whom he had a dating relationship as described by sections 71.003, 71.005, and 71.002(b) of the Family Code.

The State's first witness was a crime scene investigator, Officer Steve Fulgham. Officer Fulgham photographed Betty, Appellant's grandmother, at her residence shortly after the incident. He described a trail of blood originating on the garage floor leading inside the house. He also testified that bruising was present on her forehead and around her left eye, her nose was swollen, and there were red marks on the bridge of her nose and upper lip.

2

Betty testified that she was eighty-two years old and Appellant was her grandson who had lived with her all his life. She testified that on the day of the incident she had fallen on a couch when Appellant attempted to retrieve from her a box she was holding. After he retrieved the box, he knocked a piece of pizza away from her mouth and told her not to eat the pizza until she had washed her hands. She further testified that after the pizza incident, two unknown women rushed out of her house, knocking her into a door, thereby injuring her face, head, and nose. Shortly after the women left, Appellant borrowed her car and she called 9-1-1 to find out whether the police would keep a lookout for her car because she did not know where her grandson was going. Before she completed the call, however, Appellant returned with the car and went to his room. On the way to his room, Appellant flipped over a couch because he was angry that the two women had taken his wallet and some other object.

Officer Tyler Dowell responded to Betty's 9-1-1 call. His body camera recorded his investigation and the video was played for the jury while he commented on its contents.[2] The video showed that when he arrived at the residence, he noticed Betty looking at her car in the garage. On approaching, he immediately noticed her nose and one eye were purple and the wounds were recent. He asked her, "[w]hat happened to

---

[2] The State authenticated the contents of the video as a business record and offered Betty's statements made on the video as prior inconsistent statements. The State also asserted Appellant's statements on the video were voluntary and not the result of a custodial interrogation. Appellant objected that the contents of the video were hearsay within hearsay and barred by the confrontation clause, and Appellant's statements were inadmissible because they were made in response to a custodial interrogation without having received the mandated statutory warnings. The trial court overruled Appellant's objections and instructed the jury as follows prior to playing the video:

A witness may be impeached by showing that he or she has made other and different out-of-court statements from those made before you in trial. Such impeachment evidence may be considered by you to aid in determining, if it does so, the weight, if any, to be given the testimony of the witness at trial and his or her credibility, but such impeaching evidence, if any, is not to be considered as tending to establish the alleged guilt of the defendant in such case.

3

[your] nose?" She told the officers that her grandson was out of control, throwing things, and tearing things up. She intimated that she feared he would become more combative when the officers left. In response to Officer Dowell's questions, she indicated that she was in the garage when Appellant intentionally pushed her with his hands because he was mad. She told the officers to go in and speak with her grandson.

When the officers entered the living room, Appellant was holding a large glass bottle of whiskey that was half empty. Officer Dowell asked him to stand up and speak with him. Appellant remained sitting and asked whether he could have another drink. After Officer Dowell responded, "[n]o," Appellant took a drink from the bottle. The second officer told Appellant he had had enough to drink and to relax. Appellant took another drink and then set the bottle down. Officer Dowell moved the bottle away from Appellant and the two officers handcuffed him behind his back. Officer Dowell then asked Appellant, "[w]hat was going on?" and "[w]hat happened to [his] grandmother's nose?"

Appellant responded that he had earlier thrown a piece of pizza at his grandmother. He told the officers that he didn't "bust" her nose but only threw a piece of pizza at her in the process of trying to protect her. He said the incident was accidental.

Officer Dowell subsequently questioned Betty a second time and she told him that Appellant had hit her. She explained that when she grabbed a long-tubed object in a box, she spilled what was in the container and Appellant became angry and grabbed the object. He then grabbed her neck but did not impede her breathing. He also cause her to fall. She also indicated that the blood spots in the house and garage were from her nose. At first, she denied Appellant threw pizza at her but then stated that he may have.

4

After the video's conclusion, Officer Dowell testified without objection that Betty told him many times that Appellant had hit her. During the police investigation, Betty did not mention the presence of two women in the house and there was no physical evidence of anyone else having been in the house. Officer Dowell also testified that Appellant stated he hit his grandmother with a piece of pizza but did not mention the presence of any women in the house. By his appearance and odor, Officer Dowell concluded Appellant was intoxicated.

Officer Dowell further testified that Appellant was handcuffed because he was being detained in order to complete the investigation into the circumstances that resulted in Betty's injuries. He was also concerned Appellant was intoxicated and noncompliant, would not quit drinking, and was holding a large glass bottle which could be used as a weapon.[3] Officer Dowell testified that when the police entered the room, they had no intention of placing Appellant under arrest and handcuffed him solely to assure their safety. Appellant was detained because he had not been interviewed and the officers wanted to hear both sides of the story. Based on the grandmother's statements outside the house and the fact that her injuries did not appear to be the result of being hit with a piece of pizza, the officers escorted Appellant to a police car where he was placed under arrest.

In jailhouse visitation videos between Appellant and his grandmother,[4] he talked over her and bossed, cursed, and degraded her. He ordered her to sign a non-

---

[3] Prior to entering the living room, Appellant's grandmother had warned the officers that Appellant was combative.

[4] The State authenticated the videos as business records of the jail. On the video-recording machines, there were visual and auditory warnings that visitations were being recorded. In addition to officer safety inside the jail, another purpose for monitoring calls is to find out what information is being passed along during visitations related to gangs and drug trades.

5

prosecution affidavit telling law enforcement that she was injured in a fall. He asked her to tell the police that he did not give her a nosebleed and that she lied in her previous statement to the police at her residence on the day of the incident.

During one visitation with his grandmother, he introduced a theory that there were two girls in the house when Betty grabbed a bong and fell over the couch hitting her head on a pizza box. He indicated that he was trying to keep the bong away from her because there were drugs inside the bong, and he wanted to protect her from those drugs. He told her she needed to meet with his attorney and sign an affidavit telling how she was injured by a pizza box and then have his attorney sell the same story to the district attorney. During the remaining visitations, he continued to forcefully assert that there were two women in the house that caused her injuries, she lied in her statement to the officers, it was her fault he was going to prison, and "[i]f she loved [him], [she] would tell them."

Following the presentation of the videotaped visitations to the jury, the State rested and Appellant rested. At the charge conference, Appellant requested an instruction on a lesser-included offense or Class C misdemeanor assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(3), (c) (West 2019). The trial court overruled his request for the submission of the lesser-included offense, and thereafter, the jury found Appellant guilty as charged. Appellant pleaded true to a prior felony conviction making his offense punishable as a felony of the second degree and he was sentenced by the court to fifteen years confinement. Appellant gave timely notice of appeal and this appeal followed.

**ISSUE ONE—CUSTODIAL INTERROGATION**

In his first issue, Appellant complains that the trial court erred in admitting statements he made on an officer's body video camera in response to a custodial interrogation without being provided the requisite *Miranda* warnings.[5]  We disagree.

We review a trial court's evidentiary rulings for an abuse of discretion.  *Rhomer v. State,* 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).  The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably.  *Id.*  (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991)).  The trial court does not abuse its discretion if the decision to admit or exclude the evidence is within the zone of reasonable disagreement.  *See Rhomer*, 569 S.W.3d at 677.  If the trial court's evidentiary decision is supported by the record and there is any theory of law that would support the ruling, it is not an abuse of discretion.  *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

For a statement obtained during a custodial interrogation to be admissible against a suspect, the United States Constitution requires that the suspect be warned by police that "he has the right to remain silent, that any statement he does make may be used against him, and that he has the right to the presence of an attorney."  *Miranda*, 384 U.S. at 444.  Texas law additionally requires that police inform the suspect he has a right to terminate the interview at any time.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2018); *Williams v. State*, 257 S.W.3d 426, 432 (Tex. App.—Austin 2008, pet. ref'd).  To preclude a statement from being used against him at trial, a defendant bears the initial burden of proving the subject statement was the product of a custodial interrogation.

---

[5] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009).  Thus, we must first address whether Appellant was in custody during Officer Dowell's questioning.  *See id.*

The Court of Criminal Appeals describes "at least four general situations" that may constitute custody:  (1) when the suspect is physically deprived of his freedom in any significant way, (2) when a law enforcement officer tells the suspect he is not free to leave, (3) when a law enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and a law enforcement officer does not tell the suspect he is free to leave.  *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013).

In evaluating whether an individual was in custody, we must determine whether, given the circumstances surrounding the interrogation, a reasonable person would have perceived detention by law enforcement officers to be a restraint on his movement comparable to the restraint of a formal arrest.  *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995).  An assessment of whether a suspect has been detained to the degree associated with an arrest is made on a case-by-case basis; *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996), and when determining whether a reasonable person would believe his freedom has been restrained to the degree of formal arrest, we look only to the objective factors surrounding the detention. *State v. Ortiz*, 382 S.W.3d 367, 372-73 (Tex. Crim. App. 2012).

A person held for investigative detention is not in "custody."  *Dowthitt*, 931 S.W.2d at 255.  An investigative detention involves detaining a person reasonably suspected of criminal activity in order to determine his identity or to momentarily maintain the status quo in order to garner more information.  *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868,

20 L. Ed. 2d 889 (1968). This sort of "Terry stop" must be temporary, must last no longer than necessary to effectuate the purpose of the detention, must involve an actual investigation, and must use the least intrusive means possible. *See Davis v. State*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997) (holding that detention may continue only so long as "articulable facts" support reasonable suspicion that suspect is engaged in criminal activity).

There is no bright line establishing when a person who is handcuffed is *per se* in custody. *In re S.C.*, 523 S.W.3d 279, 283 (Tex. App.—San Antonio 2017, pet. denied). *See Martinez v. State*, 304 S.W.3d 642, 653 (Tex. App.—Amarillo 2010, pet. ref'd) (collected cases cited therein). Handcuffing for purposes of an investigative detention— including investigation, maintenance of the status quo, and officer safety—does not necessarily give rise to a custodial investigation. *Id.* at 652. A suspect who is temporarily handcuffed and placed in the back of a patrol car for purposes of an investigatory detention is not necessarily in custody, particularly when the officer tells the suspect he is not under arrest. *In re S.C.*, 523 S.W.3d at 283. If an officer tells an individual he is not under arrest, this is the "most important" circumstance offsetting physical restraint in determining whether the individual is in custody for purposes of *Miranda*. *Id.* at 284. (quoting *Howes v. Fields*, 565 U.S. 499, 515-16, 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012)).

### ANALYSIS

Here, the officers responded to Betty's 9-1-1 call and discovered her in the garage with a bruised nose and forehead, a black eye, and facial cuts. She indicated that her injuries were intentionally caused by her twenty-eight-year-old grandson when he pushed her down with his hands. She described her grandson as destroying things, tearing things

9

up, acting out-of-control, and being combative. The officers responded that they would like to talk to him and see what he had to say. At this point, Betty asked the officers to enter the house and speak with her grandson.

When they discovered Appellant, he was drinking from a large glass bottle of whiskey. The officers asked him to stand up and talk to them. He ignored their requests and continued drinking from the bottle multiple times while remaining seated. When one officer attempted to lift him up by his arm, Appellant asked, "[w]hat are you doing?" The officer responded that he "just want[ed] to talk to him for a second." Appellant responded by apologizing. In response to queries about what occurred that day and the source of his grandmother's injuries, Appellant denied that he "busted" his grandmother's nose. He told the officers that she "got hit by a piece of pizza." Because her injuries were more consistent with Betty's version of the facts than they were with Appellant's version, both officers began escorting Appellant to their patrol car. In route, he volunteered that all he did was throw a piece of pizza and that it was accidental. When he reached the patrol car, he was placed under arrest.

In this case, Appellant was physically restrained by handcuffs. The use of the handcuffs does not automatically convert a temporary detention into an arrest. *State v. Shepard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008). Here, Officer Dowell testified that Appellant was placed in handcuffs for officer safety since he had been described by his grandmother as combative, he was noncompliant, and the large glass bottle of whiskey he was holding could have been used as a weapon. Further, the officer's response to Appellant's question regarding what they were doing indicated that they were detaining him only until an investigation could be completed. It was not until Appellant advanced the improbable reason for his grandmother's injuries, i.e., he had only thrown a piece of

pizza at her, that the officers raised Appellant to his feet and began escorting him to the patrol car where he was placed under arrest.

Based on the evidence, we conclude the temporary restriction on Appellant's freedom of movement did not rise to the degree associated with an arrest and would not lead a reasonable person to believe that he was under arrest. *See In re S.C.*, 523 S.W.3d at 284. Under the circumstances, Officer Dowell's use of handcuffs was necessary to effectuate his goals to conduct an investigation, maintain the status quo, and assure officer safety. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997), *cert denied*, 522 U.S. 894, 118 S. Ct. 236, 139 L. Ed. 2d 167 (1997). Because Appellant was not in custody, his responses to Officer Dowell's questions were not the result of a custodial interrogation and they were not, therefore, subject to an objection based on the failure to provide any *Miranda* warnings. Accordingly, the trial court did not abuse its discretion by admitting the disputed portions of the video into evidence. We overrule Appellant's first issue.

### SECOND ISSUE—LESSER-INCLUDED OFFENSE

By his second issue, Appellant asserts the trial court erred when it denied his request that the jury be allowed to consider whether he committed the lesser-included offense of a Class C misdemeanor assault. During the charge conference, Appellant asserted that his statements taken from the video of Officer Dowell's body camera that he slapped a piece of pizza out of his grandmother's hand, even though for protective reasons, could be viewed as offensive or provocative, entitling him to a lesser-included-offense charge. We disagree.

11

An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).

We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011). The first step is a question of law, in which the court compares the elements alleged in the indictment with the elements of the lesser offense to determine if the proof necessary to establish the charged offense also includes the lesser offense. *Cavazos*, 382 S.W.3d at 382. The second step of the lesser-included-offense analysis is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Sweed*, 351 S.W.3d at 67-68. Because this fact question depends on the evidence presented at trial, we review the entire record in making this determination on appeal. *Id.*

The indictment in this case alleges that Appellant assaulted his grandmother by *intentionally, knowingly, or recklessly causing bodily injury* to her by grabbing her with his hand or arm or by causing her to strike a hard object or by striking her with a hard object. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West 2019). A person commits a Class C

12

misdemeanor offense under section 22.01(a)(3) if he "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." *Id.* at (a)(3). A comparison of the elements of the two offenses shows that the manner and means of an assault causing physical contact that is offensive or provocative is not included within the elements of an assault causing bodily injury. Thus, the proof necessary to establish the charged offense does not include the offense asserted as being a lesser-included offense. Furthermore, even if we were to assume that the Class C offense of assault by offensive or provocative contact differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person suffices to establish its commission (a conclusion we expressly do not reach), we find that there was no evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. Accordingly, the trial court did not abuse its discretion by overruling Appellant's request for a lesser included instruction related to section 22.01(a)(3) of the Penal Code. *Id.* Appellant's second issue is overruled.

### THIRD ISSUE—SUFFICIENCY OF EVIDENCE

Appellant next asserts that the State's evidence underlying his conviction is insufficient. In support, he asserts the evidence was insufficient to establish that he inflicted the injuries suffered by his grandmother because she testified at trial that he did not injure her. He also contends that because his grandmother's statements taken from the video of Officer Dowell's body camera were admitted solely for impeachment purposes pursuant to the trial court's limiting instruction, the State failed to come forward with any evidence he injured his grandmother. We disagree.

At trial, the State was required to prove Appellant intentionally, knowingly, or recklessly caused bodily injury to Betty (a member of his family/household as described by sections 71.002(b), 71.003, and 71.005 of the Texas Family Code) by grabbing her with his hand or arm, or causing her to strike a hard object or striking her with a hard object. Because Appellant does not challenge whether his grandmother was a family member or member of his household, our query is limited to whether the State's evidence was sufficient to establish that Appellant intentionally, knowingly, or recklessly caused bodily injury to Betty by grabbing her with his hand or arm, or causing her to strike a hard object or striking her with a hard object.

## STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the State's evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 912. This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. *See Queeman v. State,* 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

14

Further, the trier of fact is the sole judge of the weight of the evidence and credibility of the witnesses; TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), and we may not re-evaluate the weight and credibility determinations made by the fact finder. *Febus v. State*, 542 S.W.3d 568, 573 (Tex. Crim. App. 2018). Thus, we resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In our review, we must evaluate all the evidence in the record, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). Direct and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). The State may prove a defendant's criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

### ANALYSIS

Reviewing the evidence in a light most favorable to the verdict, we conclude that there is sufficient evidence to support Appellant's conviction because a rational trier of fact could have found that Appellant intentionally, knowingly, or recklessly caused bodily injury to his grandmother. Appellant is correct that his grandmother's statements taken from the video of Officer Dowell's body camera, i.e., that it was Appellant who hit her, were admitted by the State solely for impeachment purposes. However, the same evidence was admitted when Officer Dowell testified, without objection, to the same statements, i.e., that Appellant's grandmother told him many times Appellant had hit her. *Bryant v. State*, 282 S.W.3d 156, 165 (Tex. App.—Texarkana 2009, pet. ref'd) (quoting

15

*Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996)) ("If a defendant objects to the admission of evidence but the same evidence is subsequently introduced from another source without objection, the defendant waives his earlier objection.").

Aside from Officer Dowell's testimony, there is also substantial circumstantial evidence that Appellant caused bodily injury to his grandmother. First, he was alone on the premises when Officer Dowell arrived; there was no mention by either Appellant or his grandmother of any unknown women being in the house; and Officer Dowell testified there was no evidence anyone else had been on the premises. Although his grandmother testified at trial that she was injured by two unknown women leaving the house, judging from the verdict, the jury did not find her testimony credible. *Margraves*, 34 S.W.3d at 919 (jury is the sole judge of the credibility of witnesses). *See Curry*, 30 S.W.3d at 406 (inconsistencies in the evidence is resolved in favor of the verdict). This is particularly so given the recorded jail visitations where Appellant attempts to browbeat his grandmother into signing an affidavit stating two women in the house caused her injuries or one of the women grabbed a bong from her causing her to fall over the couch and hit her head on a pizza box. Further, Appellant's correspondence from jail with his grandmother contains additional attempts to persuade her to adopt this alternative theory that two unknown women caused her injuries.

There was also the testimony of the officers describing his grandmother's injuries. Officer Fulgham testified she had bruising on her forehead and around her left eye in addition to a swollen nose and red marks on the bridge of her nose and upper lip. His testimony was documented by photographs displayed for the jury. In addition, Officer Dowell testified that on approaching Appellant's grandmother, he observed that her nose and one eye were purple and the wounds were recent. He also indicated that judging

16

from the appearance of the wounds, he did not believe they were caused by a pizza box. From this testimony and Officer Fulgham's photographs, the jury could reasonably infer that Betty's injuries were caused by Appellant causing her to strike, or striking her with, a hard object rather than a piece of pizza. *Margraves*, 34 S.W.3d at 919.

Accordingly, we find there is sufficient evidence to support each element of the offense alleged in the indictment pursuant to the standard in *Jackson v. Virginia*. Appellant's third issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle

Do not publish.